**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>EUSEBIO ARCE-PADILLA, et al.,<br><br>　　　　Defendant.<br>_____<br>MODY GEORGELOS,<br><br>　　　　Petitioner.<br>_____ | No. CR 10-754-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is the Petition for Remission of Forfeiture by Innocent Third Party Mody Georgelos (Doc. 947). An evidentiary hearing was conducted on August 16, 2013, and the parties presented argument to the Court on August 20, 2013.

*Procedural History*

During the jury trial of Eusebio Arce-Padilla ("Arce-Padilla"), he voluntarily absented himself from the proceedings on July 17, 2012. On July 23, 2012, Arce-Padilla was convicted by a jury of Conspiracy to Bring Aliens Unlawfully to the United States, Transport Illegal Aliens, or Harbor Illegal Aliens. A warrant has been issued for Arce-Padilla's arrest.

1  On February 12, 2013, this Court issued a Preliminary Order of Forfeiture as to Arce-Padilla in the sum of $5,000,000.99 in U.S. currency and ordered the government may move to amend the Order of Forfeiture to substitute property. On February 25, 2013, the government filed a request to substitute real property. The Court ordered the real property known as and located at 1038 Oso Court, Rio Rico, Arizona ("Oso Court") to be forfeited.

On April 7, 2013, Petitioner Mody Georgelos ("Georgelos") filed a Petition for Remission of Forfeiture regarding property forfeited as a substitute asset against Arce-Padilla (Doc. 947). Georgelos and Arce-Padilla were married on July 1, 2013, and Georgelos testified that she periodically travels to Mexico to visit her husband.

Georgelos asserts she is the equitable and legal title owner of the Oso Court property. Georgelos also requests her attorney's fees and costs be awarded to her. On April 25, 2013, the government responded (Doc. 964). The government asserts that Georgelos is not a *bona fide* purchaser for value and did not have a pre-existing interest in the forfeited property. On August 2, 2013, Georgelos filed a Memorandum in Support of her Petition (Doc. 1010) and on August 9, 2013, the government filed a Memorandum Regarding Forfeiture Ancillary Issues (Doc. 1011).

*Forfeiture – Ancillary Proceeding*

Following the entry of a preliminary order of forfeiture, any person asserting a legal interest in the property to be forfeited may petition the court for a hearing to adjudicate the validity of the claim. Fed.R.Crim.P. 32.2(c); 21 U.S.C. § 853(n)(2).[1] This third-party claimant must demonstrate by a preponderance of the evidence that she had a vested legal right, title, or interest in the property at the time of the commission of the acts giving rise to the forfeiture or that she was a bona fide purchaser without cause to believe the property was subject to forfeiture. 21 U.S.C. §§ 853(n)(6)(A) and (B); *United States v. Nava*, 404 F.3d

---

[1] Section 853(n) is made applicable to all criminal forfeitures by 28 U.S.C. § 2461(c).

1119, 1129 (9th Cir. 2005); *United States v. Cox*, 575 F.3d 352, 358 (4th Cir. 2009) (the purpose of the ancillary hearing is to resolve third party claims).

In general, if a third party files a claim contesting the forfeiture of a forfeited asset, the court must conduct a hearing at which the court must determine if the claimant has established a basis for amending or vacating the order of forfeiture. 21 U.S.C. § 853(n).

*Relation Back Doctrine – Substitute Assets*

The parties dispute the applicability of the relation back doctrine in this case. The government cites to out-of circuit and unpublished Ninth Circuit authority for the assertion that "[w]hether the criminal forfeiture of the property was proper is not an issue subject to litigation by third parties in the ancillary proceeding". *See e.g., United States v. Dejanu*, 163 Fed. Appx. 493, 498 (9th Cir. 2006).

Although there is no published Ninth Circuit authority, the Court agrees Georgelos does not have standing to address whether the forfeiture of the property was appropriate. However, in determining the merits of Georgelos' claim, the Court finds it appropriate to discuss whether the relation back doctrine should apply in this case.

A court may order the forfeiture of substitute asserts to satisfy a money judgment where the money judgment represents the value of the proceeds of the offense, or the property involved in the commission of the offense, that cannot be forfeited directly for one of the reasons set forth in Section 853(p). *United States v. Baker*, 227 F.3d 955, 968 n.1 (7th Cir. 2000) (once the government has obtained a money judgment, it may forfeit defendant's real property in partial satisfaction of that judgment).

Furthermore, 21 U.S.C. § 853(c) sets forth the rule that the government's interest in forfeitable property vests at the time of the offense giving rise to the forfeiture, and further provides that any such property that is subsequently transferred to a third party may be forfeited unless the third party establishes that he/she is a bona fide purchaser for value of such property, and who at the time of the purchase was reasonably without cause to believe the property was subject to forfeiture. *See* 21 U.S.C. § 853(c). *United States v. Lazamenko*,

476 F.3d 642, 647 (9th Cir. 2007) (under the relation back doctrine, the government's interest in the property vests at the time the defendant commits the crime; "otherwise a defendant could attempt to avoid criminal forfeiture by transferring his property to another party before conviction").

The issue, however, is whether the relation back doctrine may be used to determine when the government's interest in a substitute asset vests. The authority is mixed. *See United States v. McHan*, 345 F.3d 262, 271 (4th Cir. 2003) (substitute asset is treated like any other asset subject to forfeiture); *United States v. Espenbeck*, 682 F.3d 472, 477-478 (6th Cir. 2012) (government's interest in substitute assets did not vest until the defendant was convicted).

Courts in other circuits have taken different positions than either the Fourth or Sixth Circuits, and some have held that the government's interest in a substitute asset vests when the asset is named in the indictment. *See United States v. Peterson*, 820 F. Supp. 2d 576, 585 (S.D.N.Y. 2011). In *United States v. Djeredjian*, 2011 WL 5402337, *3 (C.D. Cal. Nov. 7, 2011) the Court implicitly applied the relation back doctrine to a substitute asset by holding that claimant who took title to the property six (6) months after the onset of the conspiracy giving rise to the forfeiture, but years before the entry of the forfeiture order, could not meet the temporal requirement in § 853(n)(6)(A).

The *Espenbeck* court stated as to the application of the relation back doctrine to substitute assets as follows:

> It does not. The relation back doctrine clause extends only to tainted property – property described in Subsection (a), 21 U.S.C. Sec 853 (C). In construing a related section of (a), we held that this identical limitation convey[s] Congress's intent to authorize the restraint of tainted assets prior to trial, but not the restraint of substitute assets." *United States v. Parret*, 530 F.3d 422, 431 (6th Cir. 2008) (discussing 21 U.S.C. § 853[e]). The same analysis holds here. The explicit reference to 'property described in subsection (a)' in the relation-back clause limits the applicability of the relation-back principle to tainted property. As the Tenth Circuit, too, has held, 'the United States does not have a ripened interest in substitute property until 1) after the Defendant's conviction and 2) and the Court determines that the [tainted] property is out of the government's reach for a reason enumerated in the statute (citations omitted).

682 F.3d at 477-478.

- 4 -

1 The Ninth Circuit has not determined whether the relation back doctrine applies to 2 substitute assets. Because Congress has not specifically stated that it does apply and the 3 property at issue is not tainted by the crime(s), the Court finds the relation back doctrine does 4 not apply to the substitute asset. However, as discussed *infra*, Georgelos is not a *bona fide* 5 purchaser for value. Therefore, the Court need not decide in this case if the government's 6 interest vests at the time of the indictment or conviction.

*Interest in the Property*

Georgelos has alleged:

> Defendant Arce-Padilla and Petitioner Georgelos talked about the possibility of building a residence where they could live together when the time came. Defendant Arce-Padilla stated to Petitioner Georgelos that he had an "empty" lot in Rio Rico but that he had no money to build a house upon it. Petitioner Georgelos, who was employed at the time, and who had access to some of the community property held with Mr. Georgelos, also had significant savings, and had won two large jackpots in local casinos (see Exhibits #2 & #3), then entered into an agreement with Defendant Arce-Padilla that he would provide the lot in Rio Rico, and she would initiate the building of the house (because she had enough money to do so), and obtain any additional monies necessary to complete construction. The residence would be her sole property in which both of them would reside when the time came.

Doc. 947, p. 3, ¶ 10. Georgelos is not alleging she was purchasing the property, only that they would each bring something to the table. *See e.g. United States v. McHan*, 345 F.3d 262, 279 (4th Cir. 2003) (wife who acquired property from husband-defendant in less than arms-length transaction was not a bona fide purchaser). Furthermore, the quitclaim deed was executed by Arce-Padilla on April 28, 2010, *see* Doc. 947, Ex. 18, after the property had been listed as forfeitable in the indictment and after Arce-Padilla was arraigned on April 20, 2010.[2] In other words, any interest via the quitclaim deed was not without cause to believe the property was subject to forfeiture. 21 U.S.C. §§ 853(n)(6)(A) and (B); *United States v. Nava*, 404 F.3d 1119, 1129 (9th Cir. 2005).

---

[2]The government states it was deeded over on April 29, 2010; Georgelos asserts it was deeded over on April 28, 2010. Whatever the explanation for the discrepancy, the property was deeded after the indictment, initial appearance, and arraignment of Arce-Padilla.

- 5 -

Further, Georgelos' counsel conceded at oral argument that Georgelos was not claiming that she was a *bona fide* purchaser for value of the Oso Court residence. The Court finds Georgelos was not a *bona fide* purchaser.

*Equitable Interest in the Property*

"[O]nly one circuit appears to subscribe to the theory that cognizable 'legal' interests, as that term is used here, cannot include those arising in equity." *United States v. Salti*, 579 F.3d 656, 670 (6th Cir. 2009), *citation omitted*. Indeed, Ninth Circuit case law indicates that the court does not subscribe to the theory that only "legal" interests may be asserted by a claimant. *See e.g. United States v. $3,124,977.28 in U.S. Currency*, 237 Fed.Appx. 271 (9th Cir. 2007) (claimant was not an equitable owner of the assets under a constructive trust theory); *United States v. Shanholtzer*, 492 Fed.Appx. 799 (9th Cir. 2012) (forfeiture order fully preserves equity interest in forfeited property).

Furthermore, Arizona law determines what interest a claimant may have in forfeited property. *United States v. Real Property Located at 5208 Los Franciscos Way, Los Angeles, CA*, 385 F.3d 1187, 1191 (9th Cir. 2004) ("ownership interest is determined under the law of the state in which the interest arose"). Additionally, the "statute of frauds does not apply to the constructive trust doctrine because it is an equitable doctrine imposed by law and is not based on the contract." *Turley v. Ethington*, 213 Ariz. 640, 644, 146 P.3d 1282, 1286 (App. 2006). Furthermore, although the government cites to A.R.S. § 33-411.01 in its assertion Georgelos' claimed interest should have been recorded, that statute requires recordation, but then discusses indemnification if a document is not recorded. In other words, the statute recognizes that it may not be complied with. Lastly, Georgelos must demonstrate her interest in the property by a preponderance of the evidence. 21 U.S.C. §§ 853(n)(6)(A) and (B);

First, Georgelos claims she is the recipient of a parol gift of land – she appears to be asserting that this was effective since 2006 when she was in control of the property and

1  making improvements on it. *French v. French*, 125 Ariz. 12, 606 P.2d 830 (App. 1980). The
2  Arizona Court of Appeals has stated:

3  Constructive trusts have been used when a person transferred title to another for the benefit of himself or a third party, [*Nitrini v. Feinbaum*, 18 Ariz.App. 307, 501 P.2d 576 (1972)], or when a person acquired title through fraud, *In Re Estate of Rose*, 108 Ariz. 101, 493 P.2d 112 (1972), or the breach of a fiduciary relationship, *Raestle v. Whitson*, 119 Ariz. 524, 582 P.2d 170 (1978). A constructive trust is not justified when a property owner merely intends to give his interest to another but the gift is never completed. A parol gift of land is completed when the statute of frauds is complied with or when the donee takes possession of the land in pursuance of the gift and makes valuable improvements on it. *Stewart v. Damron*, 63 Ariz. 158, 160 P.2d 321 (1945). The donee's action must be exclusively referable to the gift, however. *Mershon v. Essley*, 204 Okl. 660, 233 P.2d 293 (1951).

9  *French*, 125 Ariz. at 15.

10  Georgelos also asserts that this parol gift of real property has resulted in a constructive
11  trust in the property.[3] Arizona's statute of frauds "does not bar constructive trusts, even in
12  real property interests." *Turley v. Ethington*, 213 Ariz. 640, 643, 146 P.3d 1282, 1285 (App.
13  2006), *citing French*, 125 Ariz. at 15; *Condos v. Felder*, 92 Ariz. 366, 370, 377 P.2d 305,
14  308 (1962). "A constructive trust is an equitable doctrine that prevents one person from being
15  unjustly enriched at the expense of another." *Turley*, 213 Ariz. 643, *citation omitted*.
16  Further,

17  Because imposition of a constructive trust is an equitable remedy, "[t]here is no set or unyielding formula" courts use to impose them. [*Chirekos v. Chirekos*, 24 Ariz.App. 223, 224, 537 P.2d 608, 609 (1975)]. A court may impose a constructive trust "whenever title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress or through any other means which render it unconscionable for the holder of legal title to continue to retain and enjoy its beneficial interest." [*Harmon v. Harmon*, 126 Ariz. 242, 244, 613 P.2d 1298, 1300 (App. 1980)].[2]

[2] The requirements for imposition of a constructive trust must be proven by clear and convincing evidence. *Harmon*, 126 Ariz. at 244, 613 P.2d at 1300.

23  *Turley*, 213 Ariz. at 643.

24  The evidence presented establishes by a preponderance of the evidence that there was
25  some agreement between Arce-Padilla and Georgelos regarding the property. This was

---

[3] A site inspection was apparently conducted on July 19, 2006 and the first Home Depot receipts submitted are from June 2006. Doc. 947, Exs. 5 and 14.

- 7 -

corroborated by her children's testimony. However, the evidence does not establish by a preponderance of evidence the terms of the agreement. Although Georgelos testified that the agreement was, in effect, either a parol gift or a constructive trust in exchange for her building the house, the Court does not find Georgelos to be credible. The production of a quitclaim deed executed shortly after Arce-Padilla's arraignment indicates a decision by Arce-Padilla and Georgelos to manufacture a claim. Moreover, Georgelos presented a modified document, the Certificate of Occupancy, during her testimony to support her claim without acknowledging the context of the modification until cross-examination. *See* Doc. 947, Ex. 4. Again, this appears to be an effort to manufacture a claim. The Court also considers Georgelos' interest in the outcome of this proceedings and the reasonableness of her testimony in light of all of the evidence, including a lack of corroborating documentation. *See generally* 9th Cir. Model Criminal Jury Instructions, 1.7.

Georgelos did not provide evidence that she (or others on her behalf) alone labored and incurred the cost of the building the residence. Although Georgelos testified as to the expenses in building the home, Georgelos failed to adequately corroborate the expenses. For example, although most of the Home Depot receipts indicate payments were made in cash, Doc. 947, Ex. 14, Georgelos did not present any evidence that the few purchases made with debit or credit cards were from accounts in her name. Similarly, although Sharla Georgelos provided funds that went to the building of the home on their mother's behalf,[4] no corroborating documents (e.g., bank records) were provided to the Court. Moreover, although Georgelos established she had won some casino jackpots, she failed to present any evidence that these funds (as opposed to, for example, Arce-Padilla's greater winnings), were used to build the home – for example, there was no evidence reflecting bank deposits and withdrawals at the time the home was built. Similarly, Georgelos failed to present any evidence that funds from a loan she obtained were withdrawn from an account or used at the

---

[4]Ms. Georgelos testified she provided $2000 in 2007, $1500 in 2008, $2500 in 2009, and $3700 in 2010. Although counsel expressed the total as $12,700, these amount total $9,700.

- 8 -

1  time the home was built. Additionally, although Georgelos presented a reason why, she
2  failed to present evidence from any employees *she* may have hired and paid to work on the
3  home. Although Harry Georgelos[5] testified that he provided approximately 30 hours per
4  week of labor for the building of the home off and on for two to three years and Richard
5  Georgelos testified that he provided approximately 20-25 hours per week of labor for the
6  building of the home for two to three years, Richard Georgelos also testified that he had been
7  paid fully. Moreover, Sharla Georgelos testified that Arce-Padilla was always at the property
8  and was working at the property.

9  The evidence that supports a finding that the agreement between Arce-Padilla and
10 Georgelos was for an ownership interest rather than an agreement that Georgelos could live
11 in the residence is vague or of limited credibility. For example, Sharla Georgelos testified
12 that she heard Arce-Padilla repeatedly refer to the residence as Georgelos'. This does not
13 address whether there was an agreement that Georgelos would obtain an ownership interest
14 in the residence or would live in the residence. Although Sharla Georgelos testified that she
15 had learned that Arce-Padilla was going to give Georgelos the property if Georgelos
16 constructed the residence, follow-up questions indicated that Georgelos viewed the residence
17 as her house (indeed, her dream house), but no details as to the agreement between Arce-
18 Padilla and Georgelos were presented to the Court. Similarly, Harry and Richard Georgelos'
19 testimony does not establish an agreement as to ownership as opposed to an agreement as to
20 Georgelos living in the residence. Furthermore, in considering the testimony of Georgelos'
21 children, the Court considers the bias of the children. *See generally* 9th Cir. Model Criminal
22 Jury Instructions, 1.7.

23 Moreover, the tax bills for the residence were not transferred into Georgelos' name
24 until 2010 and the utilities continue to be in Arce-Padilla's name. Further, Georgelos' tax
25 returns for the years 2006 to 2012 stated 1239 Bellota Ct., Rio Rico, Arizona, as her address.

---

[5]The Court also considers that Harry Georgelos was convicted of a felony, transportation of illegal aliens.

1  The Court finds Georgelos has not sustained her burden to establish that the terms of the
2  agreement between Arce-Padilla and Georgelos established an ownership interest in the
3  property.
4      The Court finds Georgelos has not established an equitable lien as to the labor or
5  funds expended by her or family members.  *See generally, In Re Flanagan*, 503 F 3d 171,
6  183 (2nd Cir. 2007); *French* (the more appropriate remedy was an equitable lien rather than
7  a constructive trust where the court determined the parol gift had not been completed).

*Attorneys' Fees and Costs*

Georgelos requests an award of attorney's fees and costs incurred under 28 U.S.C.A. 2412 (Equal Access to Justice Act) based on an abuse of discretion and overreaching by the Government in attempting to forfeit her equitable and legal interests in the Oso Court Property.  Although the government has not filed a response, *see* LRCiv 7.2(i) (failure to respond may deemed a consent to the granting of a motion), Georgelos has not provided any authority for her assertion that 28 U.S.C. § 2412 is applicable in criminal forfeiture proceedings, *see* LRCiv 7.2(b) (points and authorities relied upon in support of a motion are to be set forth).[6]  *See* 28 U.S.C. § 2412 (referring to attorney's fees and costs in *civil* actions).  Further, Georgelos is not a prevailing party as discussed in 28 U.S.C. § 2412.  The Court will deny this request.

Accordingly, IT IS ORDERED the Petition for Remission of Forfeiture by Innocent Third Party Mody Georgelos (Doc. 947) is DENIED.

DATED this 8th day of November, 2013.

_____
Cindy K. Jorgenson
United States District Judge

---

[6] *See* LRCiv. 47.1 ("With regard to Forms of Papers and Motions, see Rules 7.1 and 7.2 of the Local Rules of Civil Procedure.").